FILED

2014 Jan-15  PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| AMASON & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 7:12-cv-02459-JHE |
| | ) | |
| COLUMBUS LAND DEVELOPMENT, | ) | |
| LLC, GREGORY FRIEDMAN, MARK | ) | |
| CASTLEBERRY, MITUL PATEL, and | ) | |
| JATIN DESAI, | ) | |
| | ) | |
| Defendants. | ) | |

### Magistrate Judge's Report and Recommendation

Plaintiff Amason & Associates, Inc. ("Amason") filed this action against Defendants Columbus Land Development, LLC ("Columbus LLC"), Gregory Friedman, Mark Castleberry, Mitul Patel, and Jatin Desai (collectively "Defendants") alleging claims for breach of contract and breach of guaranty.[1]  Doc. 1.  Defendants move to dismiss the action for lack of subject-matter and personal jurisdiction or, in the alternative, to stay the action pursuant to the *Colorado River* doctrine.  Doc. 21.  The motion is fully briefed and ripe for review.  Docs. 21, 23-27.  For the reasons stated below, the undersigned recommends that the motion to dismiss be DENIED and the alternative motion to stay be GRANTED.

### I. Standard of Review

Federal courts are courts of limited jurisdiction, with the power to hear only cases authorized by the Constitution or by statute.   *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

---

[1] On August 20, 2012, Amason filed an amended complaint, the details of which will be discussed *infra*. Doc. 8.

U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).   Under Federal Rule of Civil Procedure 12(b)(1), a party may move the court to dismiss a case if the court lacks jurisdiction over the subject matter of the case.   A plaintiff, as the party invoking jurisdiction, bears the burden of establishing the court's subject-matter jurisdiction.   *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

Under Rule 12(b)(2),[2] "'[a] plaintiff seeking the exercise of personal jurisdiction over a non-resident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction.'" *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).   If the non-resident defendant "challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (quoting *Mazer*, 556 F.3d at 1274) (internal quotation marks omitted).   If "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id.*

## II. Procedural and Factual Background

On July 13, 2012, Amason filed this action.   Doc. 1.   The complaint contains two counts, a claim for breach of a construction contract against Columbus LLC and a claim for breach of a guaranty agreement against Friedman, Castleberry, Patel, and Desai ("Guarantor Defendants"). *Id.*   Because neither claim arises under federal law, Amason invoked the Court's diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332.   *Id.* at ¶7.   Under the Court's General

---

[2] All references to a "Rule" refer to the Federal Rules of Civil Procedure unless otherwise noted.

Order for Referral of Civil Matters to Magistrate Judges, the case was randomly assigned to Magistrate Judge Robert R. Armstrong.

On August 8, 2012, Defendants moved to dismiss the complaint for lack of subject-matter jurisdiction because Amason and Columbus LLC are both citizens of Alabama for the purpose of diversity of citizenship jurisdiction.   Doc. 3 ("August 8th Motion").   That same day, Defendants filed a lawsuit against Amason in the Circuit Court of Lowndes County, Mississippi, entitled *Columbus Land Development, LLC, et al. v. Amason & Assocs., Inc.*, Civil Action No. 2012-0124-CV ("Mississippi Lawsuit").   In the Mississippi Lawsuit, Columbus LLC seeks to recover money allegedly owed by Amason under the construction contract, and the Guarantor Defendants seek a determination they owe Amason nothing under the construction contract and the guaranty.   Doc. 23 at 3.

On August 20, 2012, Amason filed a response to the August 8th Motion and attempted to cure the jurisdictional defect by filing a notice of voluntary dismissal pursuant to Rule 41 and an amended complaint that omitted Columbus LLC as a party.   Docs. 6-8.   Thereafter, on August 27, 2012, Defendants filed a reply brief to support the August 8th Motion and a motion to dismiss the amended complaint or, in the alternative a motion to stay.   Doc. 10 ("August 27th Motion").   In the August 27th Motion, Defendants argue (1) that Amason could not cure the jurisdictional defect in this case simply by dismissing Columbus LLC, and (2) that the Court lacks personal jurisdiction over the Guarantor Defendants.   In the alternative, Defendants request the case be stayed pursuant to the *Colorado River* doctrine in favor of the Mississippi Lawsuit.

On January 14, 2013, Judge Armstrong issued a Report and Recommendation addressing the pending motions.   Doc. 16 ("R&R").   The R&R found that Defendants' challenge to subject-matter jurisdiction was moot and that the Court had personal jurisdiction over the

defendants.   *Id.*   The R&R recommended the case be stayed in favor of the Mississippi Lawsuit under the *Colorado River* doctrine.

On February 21, 2013, this case was referred to District Judge Virginia Emerson Hopkins for the limited purpose of ruling on the August 8th Motion and the August 27th Motion.   On February 28, 2013, Judge Hopkins entered an order overruling the R&R.   Doc. 20.   Judge Hopkins found that Defendants' subject-matter jurisdiction challenge was not moot and referred the case back to Magistrate Judge Armstrong "for a determination in the first instance as to whether or not Columbus LLC is an indispensable party."   *Id.* at 4.   In response to Magistrate Judge Armstrong's March 4, 2013 margin order, Defendants filed a renewed motion to dismiss. Doc. 21.   That motion has been fully briefed and is ripe for review.   Docs. 21, 23-28.   On June 19, 2013, this case was reassigned to the undersigned magistrate judge.   Doc. 29.

The underlying facts are relatively straightforward.   Amason and Columbus LLC entered into a Standard Form of Agreement between Owner and Construction Manager dated June 4, 2010, ("Construction Contract") for a construction project in Columbus, Mississippi.   Doc. 1 at ¶11; doc. 8 at ¶10.   The Guarantor Defendants signed the Construction Contract as personal guarantors of the agreement.   Doc. 1 at ¶12; doc. 8 at ¶11.   The Guarantor Defendants executed a guaranty agreement dated June 4, 2010 ("Guaranty").   Doc. 1 at ¶13; doc. 8 at ¶12.   Amason asserts it satisfied its obligations under the Construction Contract, and, despite its demand for payment, Columbus LLC and the Guarantor Defendants have refused to pay money owed under the Construction Contract.   Doc. 1 at ¶¶15-16, 23; doc. 8 at ¶¶ 14-15, 20.

### III. Analysis

#### A. Subject-Matter Jurisdiction

Per Judge Hopkins' February 28, 2013 order, the Court must determine whether Columbus LLC is an indispensable party.   An indispensable party is a person or entity whose presence in the lawsuit is required.   *See* Fed. R. Civ. P. 19.   The parties do not dispute that both Amason and Columbus LLC are citizens of Alabama for the purposes of diversity of citizenship jurisdiction and that, Columbus LLC's presence in this action would deprive the Court of subject-matter jurisdiction.   Therefore, if Columbus LLC is an indispensable party, the action must be dismissed.

#### Notice of Voluntary Dismissal

Because the nature of the lawsuit is critical to the indispensable party analysis, the Court must determine the effect of Amason's notice of dismissal, doc. 6, before it can proceed.   The parties dispute whether Amason's notice of dismissal pursuant to Rule 41 was effective to dismiss its claim against Columbus LLC.   Columbus LLC argues that Amason should have filed a motion pursuant to Rule 21 requesting that the Court exercise its power to dismiss a party.   Doc. 23 at 6. Columbus LLC is incorrect.

Amason's notice of voluntary dismissal immediately, and without action by the Court, dismissed Columbus LLC from this lawsuit.   Rule 41 provides, in part:

> An action may be dismissed by the plaintiff without order of the court by filing
>
> > (i) a notice of dismissal at any time before the opposing party serves either an answer or a motion for summary judgment; or
> > (ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A).   Because, at the time of filing, neither defendant had filed an answer or a motion for summary judgment, the notice of voluntary dismissal became effective immediately upon filing.   *See Univ. of. S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir.

1999).   The immediate effect of the notice is crucial because, as explained above, the Court lacked subject-matter jurisdiction before it was filed.   A voluntary dismissal under Rule 41(a)(1) "may precede any analysis of subject matter jurisdiction because it is self-executing and moots all pending motions, obviating the need for the district court to exercise its jurisdiction."   *Byrd v. Howse Implement Co., Inc*., 227 F.R.D. 692, 694 n.4 (M.D. Ala. 2005) (citing *Am. Tobacco*, 168 F.3d at 409).[3]   Because of the self-executing nature of Amason's notice of dismissal, the Court was not required to take any action and Columbus LLC was dismissed from the action.

Defendants' argument that Amason had to file a motion pursuant Rule 21 is misplaced. Rule 21 governs the misjoinder and nonjoinder of parties and provides that "[o]n motion or on its own, the court *may* at any time, on just terms, add or drop a party."   (emphasis added).   This rule certainly provides an avenue for a party to file a motion to drop a dispensable party from an action when that party's presence in the action may divest the Court of jurisdiction.   *See Cornelius v. U.S. Bank Nat'l Ass'n*, 452 Fed. App. 863, 865 (11th Cir. 2011).   Nothing in Rule 21, however, requires a party to use Rule 21 or prevents a party from filing a timely motion pursuant to Rule 41 to dismiss a non-diverse defendant.   *See Byrd*, 227 F.R.D. at 694.     As such, Columbus LLC was effectively dismissed from this action on August 20, 2012, and the action proceeds against the Guarantor Defendants under the amended complaint, doc. 8, filed that same day.

---

[3]   In *American Tobacco*, the Rule 41(a)(1) notice of dismissal was filed by the Attorney General.   168 F.3d at 409.   The Attorney General was neither a named plaintiff nor the counsel of record.   *Id.*   Therefore, it was not clear whether the proper plaintiff had filed the notice of dismissal, and therefore the district court was required to engage in a complex analysis of Alabama law to determine if the Attorney General's notice satisfied the requirements of Rule 41(a)(1).   *Id.* In this unique situation, the Eleventh Circuit held that filing of the notice of dismissal was not self-executing.   *Id.*   There is no dispute in this case that Amason was the proper plaintiff in this case when it filed the notice of dismissal.

6

**Indispensable Parties under Rule 19**

As explained by Judge Hopkins in her February 28, 2013 Order, doc. 20, the Court must determine whether Columbus LLC is an indispensable party.   Rule 19 delineates a two-part test for determining whether a party is indispensable.   *Challenge Homes, Inc. v. Greater Naples Care Ctr.*, 669 F.2d 667, 669 (11th Cir. 1982).   "First, the court must ascertain under the standards of Rule 19(a) whether Columbus LLC is one who would be joined if feasible" or a "necessary party." *Id.*   In analyzing whether a party is "necessary," "pragmatic concerns, especially the effect on the parties and the litigation, control."   *Id.* (quoting *Smith v. State Farm Fire & Cas. Co.*, 633 F.2d 401, 405 (5th Cir. 1980) (internal quotation marks omitted).   If, after applying the factors in Rule 19(a), the court finds that Columbus LLC "should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction), the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue."   *Id.*

Amason argues Columbus LLC is not an indispensable party.   In support, Amason points to the Eleventh Circuit's decision in *Brackin Tie, Lumber & Chip Co., Inc. v. McLarty, Farms, Inc.*, 704 F.2d 585, 587 (11th Cir. 1983); doc. 26 at 8.   In *Brackin Tie,* the Eleventh Circuit reviewed the district court's application of the Rule 19 factors and held that, in an action for breach of contract, joint obligors are not indispensable parties.   704 F.2d 585, 587 (11th Cir. 1983) (adopting the majority view that joint obligors are not indispensable parties under Rule 19). Contrary to Amason's urging, however, *Brackin Tie* is not directly on point.   *Brackin Tie* stands for the proposition *joint obligors* are not indispensable parties.   *Id.* at 587.   In that case, the entities were lessees who took on primary obligations under the disputed lease.   *Id.* at 586.   Here, Columbus LLC and the Guarantor Defendants are not joint obligors with the same status under the

contracts.[4]   Under the Guaranty (notably, the only contract under which Amason brings a claim in this action), the Guarantor Defendants are "guarantors."   *See e.g.,* doc. 8 at 29.   Columbus LLC is not a party to the Guaranty.   *See id.* at 31-37.   Instead, Columbus LLC is the primarily obligor under the Construction Contract.   Whether Columbus LLC, the primary obligor, is an indispensable party in an action for breach of a guaranty, is a completely different question than was before the Eleventh Circuit in *Brackin Tie.*

The first step, therefore, is to decide whether Columbus LLC is an entity that should be joined if feasible under Rule 19(a).   Rule 19(a)(1) provides a person or entity is required to join an action if feasible if:

---

[4]   "[S]tate law determines the interests of the parties; federal law determines whether these state-created interests render a missing person indispensable."   *Kuchenig v. Cal. Co.*, 350 F.2d 551, 556 (5th Cir. 1965) (citing Wright, *Federal Courts* 260 (1963)); *see Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions from the former Fifth Circuit handed down prior to the close of business on September 30, 1981).   The parties relationship is governed by Alabama law.   *See* Construction Contract at § 9.2.4, Doc. 1 at 22.

Under Alabama Law, a guarantor is required to answer for the debt of another only when the creditor cannot collect from the primary obligor.   *Alabama Law of Damages*, § 24.1 (6th ed.); *see also Valley Mining Corp., Inc. v. Metro Bank*, 383 So. 2d 158, 162 (Ala. 1980).   There is, however, an exception to this rule.   Under an absolute guaranty, a creditor may pursue his remedy against a guarantor without first attempting to collect from the primary obligor.   *Pilalas v. Baldwin Ctny. Sav. & Loan Ass'n*, 549 So. 2d 92, 94 (Ala. 1989).   In this case, the Guaranty is absolute.   The Guaranty states:

> [Amason] may proceed directly against Guarantors hereunder without proceeding against any other third party or guarantor and without resorting to any other remedies which [Amason] may have specified in the Construction Agreement or under applicable law and without proceeding against any other security held by the Contractor, at its sole and absolute discretion.

Doc. 1 at 32.   Therefore, although Columbus LLC and the Guarantor Defendants do not have the same status under the agreements, under the terms of the Guaranty, Amason is permitted to bring an action against the Guarantor Defendants without first attempting to collect from Columbus LLC.

8

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

None of these factors render Columbus LLC a necessary party.

As to the first factor, Columbus LLC's presence is not required for the court to accord complete relief among Amason and the Guarantor Defendants. The only persons with any interest in the Guaranty are Amason and the Guarantor Defendants, all of whom are before the court. Amason can be granted complete relief under the Guaranty, in a judgment against the Guarantor Defendants, without joining Columbus LLC in the suit. The Guaranty explicitly provides that Amason can demand full payment directly from the Guarantor Defendants (or any of them) and that Amason is not required to first demand payment from or proceed against Columbus LLC. Doc. 1 at 31-37.

The second part of Rule 19(a) focuses on possible prejudice to either the absent party or the present litigants. Analysis of this part presents a closer issue. Columbus LLC certainly has an interest in this lawsuit. Any recovery by Amason against the Guarantor Defendants necessarily would be based on a finding Columbus LLC breached the Construction Contract. Therefore, the court must determine whether the absence of Columbus LLC in any way jeopardizes its interest or subjects any party to multiple or inconsistent obligations.

Because Columbus LLC is not a party to this suit and will not have the opportunity to litigate its liability under the Construction Contract, it will not be legally bound by a judgment under the principles of *res judicata* or collateral estoppel. *See e.g.*, *Stovall v. Price Waterhouse*

9

*Co.*, 652 F.2d 537, 540 (5th Cir. 1981).  Furthermore, a judgment in this action will not, as a practical matter, impair or impede Columbus LLC's ability to protect its interests.  Columbus LLC's interest in this action relates to the underlying Construction Contract, not the Guaranty.  A judgment against the Guarantor Defendants on the Guaranty would have no effect, practical or otherwise, on Columbus LLC.  As a result, its interest in this action would not be prejudiced by its absence as a party.

The final consideration is whether, given Columbus LLC's interest in the litigation, the Guarantor Defendants might be subject to multiple or inconsistent liability.  As noted above, Amason and the Guarantor Defendants are the only parties to the Guaranty.  Once there is a judgment on the Guarantor Defendants' liability under the Guaranty, that judgment will have *res judicata* effect as between Amason and the Guarantor Defendants.  *See generally, Jang v. United Techs. Corp.*, 206 F.3d 1147, 1148-49 (11th Cir. 2000).  The pendency of another lawsuit with the same claim does not change this fact.  *Cf. In re Multidistrict Litigation Concerning Air Crash Disaster Near Brunswick, Ga.*, 879 F. Supp. 1196, 1198 (N.D. Ga. 1994).  Furthermore, a separate judgment against Columbus LLC for breach of the Construction Contract would not subject the Guarantor Defendants to multiple or inconsistent liability.  If Amason prevails, it will only be entitled to one recovery, regardless of whether it recovers from the Guarantor Defendants or Columbus LLC.

Because nothing renders Columbus LLC a necessary party under Rule 19(a), it cannot be an indispensable party, and evaluation of the Rule 19(b) factors is unnecessary.  Columbus LLC is not an indispensable party and the action may proceed without Columbus LLC.

**B. Personal Jurisdiction**

The Guarantor Defendants next contend the amended complaint is due to be dismissed because the Court lacks personal jurisdiction over them.  Doc. 23 at 10.  When a defendant challenges personal jurisdiction, a federal court must undertake a two-part analysis.  Part one requires the Court to evaluate its jurisdiction under the state's long-arm statute.  *Id.*  Alabama's long-arm statute extends to the full limits of federal due process.  *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000) (citing *Martin v. Robbins*, 628 So. 2d 614, 617 (Ala. 1993)); *see also* Ala. R. Civ. P. 4.2(b).  Therefore, the state law analysis collapses into the second part of the personal jurisdiction analysis, and the Court need only consider whether exercising jurisdiction comports with the Due Process Clause of the Fourteenth Amendment, another two-part inquiry.  *See Bulter v. Beer Across Am.*, 83 F. Supp. 2d 1261, 1266 (N.D. Ala. 2000).  First, a defendant must have sufficient "minimum contacts" with the forum state.  *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)) (citations omitted).  Second, the exercise of personal jurisdiction over a defendant must not offend "traditional notions of fair play and substantial justice."  *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 316, 66 S. Ct. at 158)) (citations omitted).

**1. Minimum Contacts**

There are two types of personal jurisdiction: specific and general.   Specific jurisdiction is based on a party's contacts with the forum state related to the cause of action.  *Helicopteros Nacionales de Colombia, N.A. v. Hall*, 466 U.S. 408, 414 nn. 8 & 9, 104 S. Ct. 1868, 1872 nn. 8 & 9 (1984); *see also Madara*, 916 F.2d at 1516 n. 7.  General personal jurisdiction arises from a party's contacts with the forum state unrelated to the litigation.  *Helicopteros Nacionales*, 466

U.S. at 414 nn. 8 & 9, 104 S. Ct. At 1872 nn. 8 & 9; *see also Madara*, 916 F.2d at 1516 n. 7.

Regardless of whether jurisdiction is specific or general, a defendant's contacts with the forum

state must be "purposeful." *Butler*, 83 F. Supp. 2d at 1265.   A defendant must have "purposefully

avail[ed] itself to the privilege of conducting activities within the forum State, thus invoking the

benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228 (1958).

Amason has not alleged the Guarantor Defendants are subject to general personal

jurisdiction, and the facts do not show their contacts with Alabama amount to the kind of

"continuous and systematic" contacts that are required support general personal jurisdiction.   *See*

*Bulter*, 83 F. Supp. 2d at 1264 ("General jurisdiction may be exercised when a defendant's contacts

with the forum are sufficiently numerous, purposeful, and continuous, as to render fair an assertion

of power over the defendant by the state's courts no matter the nature or extent of the relationship

to the forum entailed in the particular litigation . . . ."); *see also Helicopteros Nacionales*, 466 U.S.

at 414 n. 9, 104 S. Ct. at 1872 n. 9.   Instead, if there is personal jurisdiction, it will be specific

personal jurisdiction.

To assert specific personal jurisdiction, a defendant's contacts with the forum state must

satisfy three criteria: (1) the contacts must be related to the cause of action or have given rise to it;

(2) the contacts must involve an act by the defendant by which he purposefully avails himself of

the privilege of conducting activities within the forum; and (3) the contacts must be such that the

defendant should reasonably anticipate being haled into court there.   *Sloss Indus. Corp. v.*

*Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007)).

Amason asserts that the Guarantor Defendants' contacts with Alabama establish specific

personal jurisdiction.   The Guarantor Defendants contracted with Amason, an Alabama company,

to guarantee Columbus LLC's payment under the Construction Contract.   In contemplation of the

Construction Contract and Guaranty, each of the Guarantor Defendants met with Robert Amason, Jr. ("Mr. Amason"), President of Amason, in Alabama to discuss the project, Construction Contract, and Guaranty.   *See* Doc. 26-1; doc, 3-2 at ¶11; doc. 3-5 at ¶5; doc. 3-6 at ¶4; and doc. 3-7 at ¶4.   Between November 2008 and 2010, Castleberry met with Mr. Amason between two and four times in Tuscaloosa, Alabama in Amason's conference room.   Doc. 26-1 at ¶3; doc. 3-7 at ¶4.   The purpose of these meetings was to negotiate the terms of the contract and to discuss contracting methods, the project in Columbus, and other issues regarding the relationship between Amason, Mr. Amason, and the Guarantor Defendants.[5]   *Id.*   Friedman, Patel, and Desai met with Mr. Amason on May 26, 2010, in Pell City, Alabama to negotiate the terms of the Construction Contract and Guaranty and to otherwise discuss the relationship between the parties. *Id.* at ¶4.   On September 7, 2011, Friedman again met with Mr. Amason in Tuscaloosa, Alabama to discuss the project and Amason's discontent with the way the project was being handled.   *Id.* at ¶5.   Besides these meetings, the Guarantor Defendants exchanged emails and telephone calls with Mr. Amason about the project and other issues discussed at the meetings. Doc. 26-3; doc 3-7 at ¶7.

---

[5] The parties have offered conflicting evidence on the purpose of the Alabama meetings. *See e.g.*, doc. 3-7 at ¶4 (asserting that the parties discussed the construction project at the various meetings, but did not "negotiate" the actual terms of the Construction Contract or Guaranty). When, as here, "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff."   *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).   Construing the evidence as such, it is reasonable for the court to conclude that discussions between Mr. Amason and the Guarantor Defendants about the upcoming construction project in Mississippi would include a discussion of the terms of the Construction Contract and Guaranty and can be reasonably characterized as negotiations.

Amason points out that the Columbus, Mississippi project covered by the Construction Contract and Guaranty was a one-time deal between unrelated entities.   Doc. 26 at 13.   In fact, Amason contends, the Guarantor Defendants and Mr. Amason have partnered on numerous projects, one of which was in Alabama.   Doc. 26-2 at ¶6.   Amason explains that Mr. Amason is the managing member of ACH, LLC, which is a member of Peachtree Columbus Investors, LLC. *See id.*; doc. 3-2 at ¶¶9-10.   Peachtree Columbus Investors, LLC is a member of Columbus Land Development, LLC - the entity that executed the Construction Contract.   *See* doc. 3-2 at ¶6. Amason further explains that Mr. Amason and the Guarantor Defendants are members and shareholders in other companies.   Doc. 26 at 13.   Amason urges, that the parties' close business relationship enabled them to work closely to negotiate the terms of this and other contracts and guaranties.   *Id.*

The first requirement for specific personal jurisdiction is met because the Guarantor Defendants' contacts with Alabama relate to Amason's cause of action.   At the Alabama meetings, the parties discussed the construction project in Mississippi that is the subject of the Construction Contract and Guaranty.   These contacts also satisfy the second requirement, demonstrating the Guarantor Defendants purposefully availed themselves to the privilege of conducting activities within the forum.   They came into Alabama, some multiple times, to hold business meetings with an Alabama company.   These ventures into the forum were not some unrelated, coincidental foray into Alabama.   Instead, they were directed and purposeful.   Based on these contacts, the Guarantor Defendants' should have reasonably anticipated being haled into court in Alabama, the third and final requirement.

The Guarantor Defendants argue that the fact that a party contracts with a resident of the forum state is not enough to cause that party to be subject to personal jurisdiction in the forum

14

state.   That assertion is correct.   *See Burger King Corp.*, 471 U.S. at 478, 105 S. Ct. at 2185.   ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer is clearly no.").   The Guarantor Defendants, however, did not simply enter a contract with Amason and were not "one-time purchasers" of goods or services like the defendants in the cases cited to the Court.   *See Borg-Warner Accept. Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1058-59 (11th Cir. 1986) (citing *Owen of Ga. v. Biltman*, 462 F.2d 603 (5th Cir. 1972)); *Norment Sec. Group, Inc. v. Granger N., Inc.*, No. 2:08-cv-533, 2009 WL 458540 (M.D, Ala. Feb. 23, 2009); *Steel Processors, Inc. v. Sue's Pump, Inc. Rentals*, 622 So. 2d 910, 914 (Ala. 1993).   Instead, the Guarantor Defendants had a continuing business relationship with Amason.   They traveled to Alabama, some on multiple occasions, to discuss the project and contracts at issue and worked closely with Mr. Amason during and after the negotiation phrase of the construction project.   The Guarantor Defendants did not simply purchase goods from Alabama or send payments to Alabama as the defendants in the cases cited to the Court.   *See e.g., Norment*, 2009 WL 458540 at *4.

When evaluating whether a contract establishes personal jurisdiction, the Supreme Court has "emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'" *Burger King Corp.*, 471 U.S. at 479, 105 S. Ct. at 2185 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316, 63 S. Ct. 602, 604 (1943)).   When evaluating minimum contacts based on a contract, a court should consider prior negotiations and contemplated future consequences, the terms of the contract, and the parties' actual course of dealing to determine whether a defendant established the requisite minimum contacts with the forum.   *Id.*   Considering these factors, the Guaranty and the

Guarantor Defendants' other contacts with Alabama show they purposefully availed themselves to the privileges of doing business in Alabama. Each of the Guarantor Defendants spent time in Alabama discussing the underlying project and negotiating the terms of the Construction Contract and Guaranty. Additionally, the Guaranty contemplated the Guarantor Defendants' continuing obligation to Amason, an Alabama entity, after the contracts were signed and during and after the construction project. *See Marathon Metallic Bldg. Co. v. Mountain Empire Const. Co.*, 653 F.2d 921 (5th Cir. 1981). Considering the continuous course of dealing between the parties, the Guarantor Defendants' contacts with Alabama are such that they should have reasonably anticipated being haled into court in Alabama. The Guarantor Defendants have sufficient minimum contacts with Alabama.

### 2. Fundamental Fairness

Besides minimum contacts, due process requires that the Court consider the fairness of forcing a defendant to litigate in a foreign forum. To determine if the exercising of personal jurisdiction over a defendant offends "traditional notions of fair play and substantial justice, *Int'l Shoe Co.*, 326 U.S. at 316, 66 S. Ct. at 154, the Court will evaluate the nature of a defendant's contacts with the forum in light of additional factors, including: (1) the burdens on the defendant of litigating in the foreign forum; (2) the interests of the forum state in overseeing the litigation; (3) the interests of the plaintiff in efficient, substantial relief; (4) the interest of the interstate judicial system in economical dispute resolution; and (5) the joint interests of the states in promoting basic social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77, 105 S. Ct. 2174 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559 (1980)). These factors "may be used to bolster a conclusion that the exercise of personal jurisdiction is actually proper when fewer than the otherwise sufficient number of minimum contacts are present

16

or to defeat jurisdiction in the face of strong evidence of otherwise sufficient, purposeful connections between the defendant and the forum state." *Butler*, 83 F. Supp. 2d at 1265 (citing *Burger King Corp.*, 471 U.S. at 477, 105 S. Ct. at 2184-85).

Considering these factors, the court's exercise of personal jurisdiction over the Guarantor Defendants will not make the litigation "so gravely difficult and inconvenient" they are unfairly at a "severe disadvantage" in comparison to Amason. *Burger King Corp.*, 471 U.S. at 478, 105 S. Ct. at 2185. Friedman, Desai, Patel are residents of Georgia and executed the Guaranty in Georgia. Doc. 1 at 2, 34-36. Castleberry is a resident of Tennessee and executed the Guaranty in Mississippi. Doc. 1 at 2, 27. The construction project that the Guaranty covers was in Mississippi. Doc. 1 at ¶11. None of the Guarantor Defendants have shown how litigating this matter in Alabama places an undue burden on them. The Guarantor Defendants traveled to Alabama to meet with Amason about this project and agreed to have Alabama law govern the contracts. Doc. 1 at 22 (§ 9.2.4 "Governing Law"). They can certainly travel to Alabama, as opposed to traveling to another neighboring state, to litigate this matter. Furthermore, Amason has an interest in enforcing the Guaranty in Alabama. None of the remaining factors weigh against personal jurisdiction in Alabama. Based on these considerations, the assertion of personal jurisdiction over the Guarantor Defendants does not offend due process.

### C. *Colorado River* Doctrine

The Guarantor Defendants contend that, if the Court determines it has jurisdiction, the Court should abstain[6] from exercising such jurisdiction and stay the action pursuant to the

---

[6] Courts disagree on whether the *Colorado River* doctrine is truly a doctrine of abstention. Some courts simply call it a doctrine of "exceptional circumstances," while other courts use the term "abstention." For clarity, this court will use the words "abstain" and "abstention," but notes this finer point of distinction.

*Colorado River* doctrine.   The *Colorado River* doctrine is a doctrine of "exceptional circumstances" that authorizes a federal district court to stay an action when there is an ongoing parallel action in state court.   *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 998 (11th Cir. 2004).[7]   The doctrine is based on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (quoting *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1236 (1976)).   The Eleventh Circuit has explained that "[a]lthough federal courts have a 'virtual unflagging obligation . . . to exercise the jurisdiction given them' they may defer to a parallel state proceeding under 'limited' and 'exceptional' circumstances."   *Id.* (quoting *Colorado River*, 424 U.S. at 817-18, 96 S. Ct. at 1236).

The Court must first decide whether the Mississippi Lawsuit and the instant federal action are in "parallel."   Proceedings need not involve exactly identical parties, issues, and requests for relief to be deemed parallel.   *Ambrosia Coal & Constr. Co.*, 368 F.3d at 1329.   Rather, the *Colorado River* analysis applies when federal and state proceedings involve *substantially* the same parties and *substantially* the same issues.   *Id.* at 1330.   Amason does not dispute the actions are parallel or substantially similar.   Amason and the Guarantor Defendants are parties to both actions, and both cases will require resolving the same issues.   Although the Mississippi Lawsuit includes an additional claim (breach of contract) and an additional party (Columbus LLC), this Court will have to determine the breach of contract issue, i.e., whether there has been a breach of the Construction Contract, before it can determine if the Guarantor Defendants are liable for

---

[7] The Eleventh Circuit has explained that "a stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine."   *Moore*, 374 F.3d at 998.

breach of the Guaranty.   The only practical difference in the two cases is the absence of Columbus

LLC from this action.   Thus, the actions are substantially similar and parallel.

Because the state and federal actions are parallel, the Court next considers the following

factors set forth by the Supreme Court to determine whether exceptional circumstances exist such

that it should abstain from exercising jurisdiction:

> (1) the order in which the courts assumed jurisdiction over the property;
> (2) the relative inconvenience of the fora;
> (3) the desire to avoid piecemeal litigation;
> (4) the order in which jurisdiction was obtained and the relative progress of the two actions;
> (5) whether federal law provides the rule of decision; and
> (6) whether the fora will adequately protect the rights of all parties.

*Moorer*, 374 F.3d at 997 (quoting *TransSouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1294-94 (11th

Cir. 1998)).   The Court must also consider "the vexatious or reactive nature of either the federal or

state litigation" in deciding whether *Colorado River* doctrine abstention is proper.   *Am. Bankers*

*Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 884 (11th Cir. 1990) (quoting *Moses H. Cone*

*Mem. Hosp. v. Mercury Constr. Co.*, 460 U.S. at 1, 17 n.20, 103 S. Ct. 927, 937 n. 20 (1983)).

The decision of whether to abstain is not based "on a mechanical checklist, but on a careful

balancing of the important factors as they apply in a given case, with the balance heavily weighted

in favor of the exercise of jurisdiction."   *Moses H. Cone Mem. Hosp.*, 460 U.S. at 16, 103 S. Ct. at

937.   The weight the court attributes to each factor will vary depending on the particulars of each

case.   *Id.*

### 1. Jurisdiction Over the Property

The first *Colorado River* factor considers whether one of the courts has assumed

jurisdiction over the property at issue.   The first factor is inapplicable because neither the state

court action nor the federal court action are proceeding *in rem*, and there is no specific property

19

over which either court would assume jurisdiction.  *See Ambrosia Coal & Constr. Co.*, 368 F.3d at 1332. As such, the first factor is neutral.

### 2. Inconvenience of the Federal Forum

Next, the court must consider the inconvenience of the federal forum.  The Eleventh Circuit instructs that "[t]his factor should focus primarily on the physical proximity of the federal forum to the evidence and witnesses . . . ."  *Id.*   Relevant considerations include where the suits are pending, where the evidence or witnesses are located, and the availability of compulsory process.  *Brigman v. Great Am. Opportunities, Inc.*, No. 11-00470-KD-B, 2012 WL 262394, *7 (S.D. Ala. Jan. 6, 2012).   The parties dispute whether this factor supports abstention.   Defendants argue that the inconvenience of the federal forum weighs in favor of abstention.   They point to several facts, including the underlying construction project was located in Columbus, Mississippi, that all the work to be performed under the Construction Contract was done in Mississippi, and that any potential third-party witnesses are likely to be in Mississippi where the contract was performed.   Doc. 23 at 16.   All of these are notable considerations.   On the other hand, as Amason points out, that Guarantor Defendant Castleberry is the only party that resides in Mississippi. The remaining parties are residents of Georgia, Tennessee, and Alabama.   If litigation were to occur in Mississippi, those parties would be required to travel.   Notably, however, the state courthouse in Columbus, Mississippi and the federal courthouse in Tuscaloosa, Alabama, are approximately sixty miles apart.   Any inconvenience based on travel, to either forum, would be negligible.

Because some parties will be required to travel regardless of the forum, the proximity of the Mississippi forum to the construction site and potential third-party witnesses makes it a more

convenient forum than Alabama.   For the reasons stated above, however, Alabama is not a wholly inconvenient forum.   This factor weighs slightly in favor of abstention.

### 3. Avoidance of Piecemeal Litigation

The third *Colorado River* factor considers the potential for inconsistency and piecemeal litigation. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Hendricks v. Mortgage Electronic Registration Systems, Inc.*, No. 8:12-cv-02801, 2013 WL 1279035, *4 (M.D. Fla. Mar. 28, 2013) (quoting *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 979 (9th Cir. 2011)).   While the potential for inconsistent and piecemeal litigation is often considered the most important factor, *see Moses H. Cone Mem. Hosp.*, 460 U.S. at 19, 103 S. Ct. at 939, the possibility of such does not always favor abstention.   If the potential for inconsistent results and piecemeal litigation always supported abstention, "the third *Colorado River* factor would seemingly support abstention in every federal case that has a parallel state case." *Ambrosia Coal & Constr. Co.*, 368 F.3d at 1333. Instead, the Eleventh Circuit views this factor cautiously and highlights the requirement that the circumstances of the parallel cases that would lead to piecemeal litigation be "abnormally excessive and deleterious." *Id.*

Having the same factual claims in state and federal courts cause unnecessary inconvenience and expense and raise a distinct danger of duplicative, piecemeal litigation.   The more the two actions are alike, the more this is exacerbated.   Based on these considerations, numerous district courts in the Eleventh Circuit, have found that when there has been identical litigation filed in both federal and state courts, duplicative proceedings would be unduly excessive. *See e.g., Sides v. Simmons*, No. 07-cv-80347, 2007 WL 3344405, at *3 (S.D. Fla. Nov. 7, 2007); *Leaderstat, LLC v. Abisellan*, No. 8:06-cv-1337-T-23TGW. 2007 WL 5433486, at *3 (M.D. Fla.

Jan. 24, 2007); *Bosdorf v. Beach*, 79 F. Supp. 1337, 1344 (S.D. Fla. 1999); *Benetton Servs. Corp. v. Benedot, Inc.*, 758 F. Supp. 685 (N.D. Ala. 1991).   Although the Mississippi Lawsuit and the instant federal court actions are not identical, all of the claims and issues before this Court are part of the state court action in Mississippi.   The same considerations supporting a stay for identical actions apply here.   To this point, another district court noted, "when there are additional claims raised in the state court case, abstention is particularly appropriate because the state court case is more comprehensive, and the state court 'can determine at one time all of the claims arising from [the] same set of facts.'" *Rambaran v. Park Square Enters., Inc.*, No. 6:08-cv-247-ORL-19GJK, 2008 WL 4371356, *6 (M.D. Fla. Sept. 22, 2008) (quoting *Paolino v. McClain*, No. 4:06-cv-00025, 2006 WL 2025063, *4 (S.D. Ga. July 17, 2006)).

Furthermore, there are concerns about collateral estoppel if the two cases continue. Because the one claim in this action is included in the Mississippi Lawsuit and because that lawsuit is further along than this case, to be discussed *infra*, there is significant potential that once a decision in the Mississippi Lawsuit is rendered, it will moot the issues pending before this court. *See e.g., O'Dell v. Doychak*, No. 606-cv-677-ORL-19KRS, 2006 WL 4509634, *7 (M.D. Fla. Oct. 20, 2006) (discussing the possibility of state court proceedings mooting the federal court action under the third factor, avoiding piecemeal litigation).   To continue this action knowing that such an outcome is likely, is an unnecessary waste of judicial resources.

The court in the Mississippi Lawsuit can resolve all of the issues concerning the parties' rights and obligations under the Construction Contract and Guaranty.   This Court cannot do the same.   Columbus LLC is not and cannot be a party to this action.   Anything that occurs here will, as a practical matter, have to be duplicated in Mississippi.   This factor weighs heavily in favor of abstention.

### 4. Order in Which the Courts Assumed Jurisdiction

Under the fourth *Colorado River* factor, the court must consider the order in which the fora obtained jurisdiction. This factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Ambrosia Coal & Constr. Co.*, 368 F.3d at 1333 (quoting *Moses H. Cone Mem. Hosp.*, 460 U.S. at 21, 103 S. Ct. at 939-40). Although the federal forum was the first to obtain jurisdiction, the relative progress of the Mississippi Lawsuit tips this factor in favor of abstention.

This court acquired jurisdiction on July 13, 2012. Although this Court did not have jurisdiction when Amason filed its original complaint on this date, the amended complaint relates back to the date of the original complaint, despite its new basis for jurisdiction, because the factual allegations remained the same. *See* 3 James Wm. Moore, et al., *Moore's Federal Practice* ¶ 15.15 [3.-2], at 15-154 (2d ed. 1993). The Mississippi court did not obtain jurisdiction until the Mississippi Lawsuit was filed approximately three weeks later on August 8, 2012.

The relative dates of filing, however, are not the court's only consideration. Notably, the Mississippi Lawsuit has progressed further than this action. In an April 15, 2013 hearing, Judge Lee S. Coleman denied a motion to stay the Mississippi Lawsuit in favor of this case. Doc. 27-1 at ¶6. Judge Coleman found that the Mississippi state court "is the only court in which all the matters can be completely resolved" and noting that "[the Mississippi court] . . . feels that conflicting questions of fact should be resolved by the same jury if possible" *Id.* As such, Judge Coleman exercised his discretion and denied the motion to stay proceedings. *Id.* Since that time, Columbus LLC and the Guarantor Defendants have propounded written discovery in the Mississippi Lawsuit and represented to this court they would begin taking depositions. Doc. 27 at 3. There has not been similar progress in this action. Discovery has not begun. If this case

proceeds, the defendants will have fourteen days to file their answer.   Fed. R. Civ. P. 12(a)(4)(A).

Thereafter, the parties will have 45 days to hold a discovery planning conference and file a report

with the court.   N.D. Ala. Local Rule 26.1.   This Court would then enter a scheduling order and

the parties could promptly serve discovery,   responses to such discovery, however, would not be

due for another thirty days.   Fed. R. Civ. P. 33, 34, 36.   The Mississippi Action is further along

than this action.   This factor weighs in favor of abstention.

### 5. Which Law Governs

The next factor that the Court must consider is whether state or federal law will be applied.

The claims asserted in this action and the Mississippi Lawsuit are governed by state law.   While

the applicability of state law generally weights in favor of abstention, *see e.g., Bankers Ins. Co. v.

Countrywide Fin. Corp.*, No. 8:11-cv-01630-T-17, 2012 WL 2594341, * 9 (M.D. Fla. July 5,

2012), the Construction Contract provides it is governed by the law of Alabama, not Mississippi.

A federal court in Alabama is in just as good a position, if not better, than a Mississippi state court

to apply Alabama law.   This factor is neutral, if not slightly disfavorable to abstention.

### 6. Adequacy of the Fora to Protect the Parties' Rights

The sixth and final *Colorado River* factor considers the adequacy of the fora to protect the

parties' rights.   Generally, this factor "will only weigh in favor or against abstention when one of

the fora is inadequate to protect a party's rights."   *Ambrosia Coal & Constr. Co.*, 368 F.3d at 1334

(citing *Noonan South, Inc. v. County of Volusia*, 841 F.2d 380, 382 (11th Cir. 1988)).   Defendants

have questioned this court's ability to protect Columbus LLC's rights based upon its absence from

the litigation.   However, as discussed *supra*, Columbus LLC's rights will not be prejudiced by the

continuation of this action in its absence.   Because both fora are adequate, this factor is neutral.

### 7. Other Considerations: Forum Shopping and the Vexatious or Reactive Nature of the Second Lawsuit

Amason contends that, by filing the Mississippi Lawsuit, Columbus LLC and the Guarantor Defendants are attempting to engage in impermissible forum shopping.   Doc. 26 at 17. While such a practice is heavily disfavored, what the defendants have done is neither improper nor "forum shopping."   Columbus LLC cannot be joined in this action.   Columbus LLC and the Guarantor Defendants filed the Mississippi Lawsuit on the same day they moved to dismiss this lawsuit based on that fact that Columbus LLC cannot be joined.   It is reasonable for the Court to conclude that Columbus LLC filed a separate lawsuit in Mississippi state court to address its claims against Amason when it realized it could not be a part of this action. Including the Guarantor Defendants in Mississippi Lawsuit to obtain complete relief is only reasonable.    This is certainly not the type of vexatious nature that would weigh against abstention.

### Conclusion

In balancing the above factors, particularly the second, third, and fourth factors, and despite the heavy bias the Court must exercise in favor of not abstaining, the Court finds the *Colorado River* factors taken together weighs strongly in favor of abstention.   The undersigned recommends that the Court abstains under the *Colorado River* doctrine.

### IV. Recommendation

Based on the foregoing, it is hereby **RECOMMENDED** Defendant's motion to dismiss, doc. 21, be **DENIED** and its alternative motion to stay be **GRANTED**.

### V. Notice of Right to Object

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2), Fed. R. Civ. P., any party may file specific written objections to this report and recommendation within fourteen (14) days from

the date it is filed in the office of the Clerk.   Failure to file written objections to the proposed

findings and recommendations contained in this report and recommendation within fourteen (14)

days from the date it is filed shall bar an aggrieved party from attacking the factual findings on

appeal.   Written objections shall specifically identify the portions of the proposed findings and

recommendation to which objection is made and the specific basis for objection.   A copy of the

objections must be served upon all other parties to the action.

DONE this 15th day of January 2014.

_____

JOHN H. ENGLAND, III
UNITED STATES MAGISTRATE JUDGE